USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:________________
DATE FILED: 08/13/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

331 W 38TH STREET LLC, et al.,

Plaintiffs,

-v-

PENN-STAR INSURANCE COMPANY,

Defendant.

25-cv-4232 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant Penn-Star Insurance Company ("Defendant" or "Penn-Star") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint of Plaintiffs 331 W. 38th Street LLC ("331 W. 38th") and Tamburello Management, LLC ("Tamburello," and with 331 W. 38th, "Plaintiffs"). Dkt. No. 21. For the reasons that follow, the motion is denied.

**BACKGROUND**

For purposes of this motion, the Court accepts as true the well-pleaded allegations of the Amended Complaint.

**I. The Parties and the Policy**

331 W. 38th is a New York limited liability company with its principal place of business in Brooklyn, New York. Dkt. No. 18 ¶ 2 ("AC"). It owns the commercial building located at 331 W. 38th Street, New York, NY (the "Premises"). *Id.*

Tamburello is a New York limited liability company with its principal place of business in Brooklyn, New York. *Id.* ¶ 3. It is the real estate manager of the Premises. *Id.*

Penn-Star is a Pennsylvania corporation, with its principal place of business in Bala Cynwyd, Pennsylvania. *Id.* ¶ 4. Penn-Star is the insurer on a commercial general liability

insurance policy, Policy No. PAV0264920, for the policy period August 30, 2020 to August 30, 2021 issued to 331 W. 38th (the "Policy"). *Id.* ¶ 7. 331 W. 38th is an insured under the Policy and Tamburello is an additional insured. *Id.* ¶¶ 2–3, 9.

The Policy was the only commercial general liability insurance maintained by 331 W. 38th covering the Premises. *Id.* ¶¶ 2, 9. The insuring clause of the Policy, Section I Coverage A—Bodily Injury and Property Damage Liability, provides in relevant part as follows:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and
>
> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages A and B.
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory".
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II—Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Dkt. No. 18-1 at 15.[1]

The Policy contains an endorsement titled "EXCLUSION-INJURY TO INDEPENDENT CONTRACTORS" (form EPA-1774 (01/2017)) ("Independent Contractor Exclusion") which provides as follows:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> A. The following is added to 2. Exclusions of SECTION I—COVERAGE A—Bodily Injury and Property Damage Liability: This insurance does not apply to "bodily injury" to any independent contractor, subcontractor, any "employee" of any independent contractor or subcontractor, or any casual laborer or "volunteer worker" while performing any work for you.
>
> B. The following is added to 2. Exclusions of SECTION I—COVERAGE B—Personal and Advertising Injury Liability: This insurance does not apply to "personal and advertising injury" to any independent contractor, subcontractor, any "employee" of any independent contractor or subcontractor, or any casual laborer or "volunteer worker" while performing any work for you.

Dkt. No. 18-1 at 46.

## II. The Underlying Action

On July 7, 2021, Daniel Hernandez ("Hernandez") filed a personal injury action in New York State Supreme Court, New York County, alleging common law negligence as well as violations of New York Labor Law ("NYLL") §§ 200, 240(1), and 241(6) (the "Underlying Action"). AC ¶ 10. He named 331 W. 38th, among others, as defendants. *Id.* On December 20, 2021, Hernandez filed an Amended Verified Complaint, asserting similar claims. *Id.* The Amended Verified Complaint is attached to the complaint in this action and incorporated by reference. *Id.* It names 331 W. 38th and Tamburello as defendants along with Randazzo Construction Group LLC ("Randazzzo LLC").

[1] Citations to this docket entry use ECF pagination.

Hernandez alleges that on February 23, 2021, he suffered serious, permanent and extremely painful personal injuries when he fell from an elevation on the Premises. Dkt. No. 18-2 ¶¶ 52, 56. Hernandez alleges that, at the time, he was an employee of Millennium Tank Maintenance ("Millennium Tank"), which was retained by one of the defendants in the Underlying Action "to perform construction, demolition, excavation, erection, repairing, altering, painting, cleaning, and/or pointing labor and/or services" upon the Premises. *Id.* ¶¶ 47–49. He further claims that defendants "had the non-delegable duty to ensure" that the Premises and work site were kept safe and free of dangers and hazards "to those workers lawfully thereat," that defendants "had actual and/or constructive notice of the dangerous and defective conditions" at the Premises, and that his injuries were the result of defendants' negligence. *Id.* ¶¶ 51–55. Hernandez brings claims for common law negligence and violations of NYLL § 200, § 240, and § 241, as well as Rule 23 of the Industrial Code for the State of New York.

Defendants answered the complaint and asserted various defenses. Dkt. No. 18-3.

## III. 331 W. 38th's Tender to Penn-Star

Upon being sued by Hernandez, 331 W. 38th promptly put Penn-Star on notice of the Underlying Action and requested defense and indemnification under the Policy. AC ¶ 18. Penn-Star issued a written disclaimer of coverage on December 8, 2021, acknowledging receipt of the complaint in the Underlying Action but declining to defend or indemnify Plaintiffs. *Id.* ¶ 19. Penn-Star asserted that since Hernandez allegedly was an "employee of an independent contractor" and was "injured while performing work for you," the Independent Contractor Exclusion applied. *Id.*; Dkt. No. 18-4 at 10.

## IV. The Allegations of the AC

Plaintiffs allege that Hernandez's account of the incident is dubious and that Hernandez was not working on behalf of Millennium Tank on the day in question. AC ¶ 13. In particular,

Plaintiffs allege that the principal of Tamburello, Salvio Randazzo ("Randazzo"), was present on the Premises and supervising the work performed on the day of the alleged accident, and he did not see Hernandez at the job site. *Id.* ¶ 13. That day, the work being performed at the Premises involved the removal of an old boiler from the basement. *Id.* ¶ 14. Randazzo observed three individuals carrying out boiler removal at the Premises and Hernandez was not among them. *Id.* ¶ 14. Plaintiffs expressly instructed the workers on site that day not to use the exterior basement staircase for removing the boiler or for any other purpose, because that outdoor staircase was visibly in a deteriorated and potentially unsafe condition. Instead, the workers were directed to use an interior route or alternative method to move materials. *Id.* ¶ 15. The three boiler-removal workers complied with these instructions and did not use the exterior basement stairs at any time while performing their work. *Id.* Plaintiffs dispute that Hernandez was present on the Premises at the time of the alleged accident and assert that if Hernandez was present, he was acting outside the scope of any work authorized at the Premises. *Id.* ¶ 16.

In the Underlying Action, no determination has been made as to whether Hernandez was actually on site or whether he was present as an authorized worker or trespasser at the time of the incident. *Id.* ¶ 17. Plaintiffs allege that Penn-Star made no inquiry into whether Hernandez was actually present or performing work for the insured on the date of the accident, nor into the precise nature of his employment or activities, and that Penn-Star's denial was issued despite the significant uncertainty surrounding Hernandez's actual involvement in the project. *Id.* ¶ 20.

As a result of Penn-Star's refusal to defend, Plaintiffs have been forced to defend the Underlying Action at their own expense, incurring substantial attorneys' fees and litigation costs. *Id.* ¶ 21. The Underlying Action remains pending.

## PROCEDURAL HISTORY

Plaintiffs commenced this action by summons and complaint filed in New York State Supreme Court, New York County on April 4, 2025. Dkt. No. 1-1.

On May 20, 2025, Defendant removed this case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). Dkt. No. 1.

Plaintiffs filed the AC on October 14, 2025. Dkt. No. 18.[2]

Defendant filed this motion to dismiss along with a memorandum of law in support of the motion on December 3, 2025. Dkt. No. 21. Plaintiffs filed a memorandum of law in opposition to the motion to dismiss on January 9, 2026. Dkt. No. 24. Plaintiff also filed the declaration of Christopher R. Travis in opposition to the motion to dismiss. Dkt. No. 25. On January 22, 2026, Defendants filed a reply memorandum of law in further support of the motion to dismiss. Dkt. No. 27.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

[2] Plaintiffs attempted to file the AC on October 10, 2025, but it was rejected due to a filing error. Dkt. No. 17. Upon the filing of the AC, Defendant's motion to dismiss Plaintiff's initial complaint was denied as moot. Dkt. No. 16.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

When adjudicating a motion to dismiss under Rule 12(b)(6), the Court considers not only the well-pleaded allegations of the complaint, but also documents incorporated by reference and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002); *see Gray v. Wesco Aircraft Holdings, Inc.,* 454 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order). When a document is incorporated by reference, the Court is guided by the terms of such documents rather than a plaintiff's characterization of them. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

**DISCUSSION**

Plaintiffs seek a declaratory judgment that: (1) Penn-Star has a duty to defend Plaintiffs in the Underlying Action; (2) Penn-Star must reimburse all defense costs incurred to date; and (3) Penn-Star is obligated to indemnify Plaintiffs against any liability imposed on Plaintiffs in the Underlying Action. AC ¶¶ 32–36. Plaintiffs also bring a claim for breach of contract, seeking damages in the form of legal fees and defense costs for Penn-Star's breach of its contractual duty to defend Plaintiffs in the Underlying Action. *Id.* ¶¶ 37–41. Penn-Star moves to dismiss the AC under Rule 12(b)(6) for failure to state a claim. Dkt. No. 21. Penn-Star argues that the AC violates the injunction of Federal Rule of Civil Procedure 8(a)(2) that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

P. 8(a)(2), and that the Independent Contractor Exclusion applies as a matter of law depriving Plaintiffs of any right to insurance coverage. For that reason, Penn-Star argues that both claims must be dismissed.

**I. Compliance with Rule 8(a)(2)**

Penn-Star argues that the AC should be dismissed for failure to comply with the Federal Rules of Civil Procedure. Dkt. No. 21-1 at 17. Penn-Star notes that some paragraphs of the AC include numerous statements in violation of Rule 10(b) and that the AC includes legal argument. *Id.* at 17–18; *see* Fed. R. Civ. P. 10(b). Penn-Star also argues that certain factual allegations of the AC should be disregarded as irrelevant because the AC references dates other than the date of the incident alleged in the Underlying Action. Dkt. No. 21-1 at 8–9.

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A complaint fails to comply with Rule 8(a)(2) if it is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) (summary order) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (holding that complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"). Rule 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (internal quotation marks and citation omitted). It simply requires, "at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Id.* (internal quotation marks and citation omitted).

The AC easily satisfies that standard. Plaintiffs plead their complaint in forty-one numbered paragraphs, laying out the facts that Plaintiffs claim entitle them to relief. It is not

verbose, confused, ambiguous, vague, or unintelligible. It is true that Plaintiffs at times include legal argument in their allegations. *See* AC ¶¶ 22–23, 30. Such allegations are unnecessary and, perhaps, inappropriate. *See Gleis v. Buehler*, 2012 WL 1194987, at *5 (D. Conn. Apr. 10, 2012). They also are unexceptional. To the extent that an allegation calls for a legal conclusion and thus does not permit an answer, Penn-Star need not answer it. *See* Fed. R. Civ. P. 8(b)(6) (requiring an allegation to be answered only "if a responsive pleading is required"). If the legal argument was really so objectionable and so immaterial, Penn-Star could file a motion to strike under Rule 12(f). *See* Fed. R. Civ. P. 12(f). "The Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). There is no reason why Plaintiffs' inclusion of legal argument and case citations in a few paragraphs of their complaint should lead to dismissal.

The errors in the AC also do not render its factual allegations "irrelevant" as Penn-Star claims. Dkt. No. 21-1 at 9. The AC alleges that the complaint in the Underlying Action states that the accident occurred on March 18, 2021, and later references March 25, 2021 as the date of the alleged incident. AC ¶¶ 11, 16. Plaintiffs state in opposition to the motion to dismiss that the reference to the March 2021 dates in the AC was a "clerical mistake." Dkt. No. 24 at 14. The complaint in the Underlying Action that is attached to the AC and incorporated by reference alleges that the incident occurred on February 23, 2021. Dkt. No. 18-2 ¶ 52. The complaint in the Underlying Action is considered part of the pleadings, for what it alleges (and not for the truth). Fed. R. Civ. P. 10(c). The Court refers to it and not to Plaintiffs' misquotation of it. *Cf. Starke v. United Parcel Serv., Inc.*, 513 F. App'x 87, 88 (Mar. 8, 2013) (summary order) ("We look not only at the allegations in the complaint but also at any document that is integral to the

complaint, and we are guided by the terms of such documents rather than a plaintiff's characterization of them. (citing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005))). The error, moreover, is immaterial. When it comes to stating whether Herrnandez was working at the Premises at the time of the accident, the AC refers to "the date of the alleged incident," and not to a date in March 2021. *See* AC ¶ 13 (noting that supervisor was present "on the date of the alleged accident" and did not see Hernandez "on the job site at any time that day"); *id.* ¶ 14 (noting three workers, none of whom was Hernandez, carried out boiler removal "[o]n the date of the alleged accident").

Penn-Star's motion to dismiss the AC pursuant to Rules 8(a)(2) and 10 is denied. Plaintiffs are granted leave to file a corrected Amended Complaint by no later than August 18, 2026, limited to correcting the dates on which the complaint in the Underlying Action alleges the incident occurred.

## II. Failure to State a Claim under Rule 12(b)(6)

Penn-Star argues that Plaintiffs' claim for declaratory judgment should be dismissed because the allegations of the complaint in the Underlying Action "fit[] squarely within" the Independent Contractor Exclusion and thus preclude any possibility of coverage. Dkt. No. 21-1 at 12. Penn-Star additionally argues that the allegations of the AC do not create a viable basis for potential coverage. *Id.* at 12–13.

"An insurance agreement is subject to principles of contract interpretation." *Burlington Ins. Co. v. N.Y.C. Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017) (quoting *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 37 N.E.3d 78, 80 (N.Y. 2015)). "As with the construction of contracts generally, 'unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of

law for the court.'" *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008) (quoting *White v. Cont'l Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007)).

Plaintiffs' complaint principally concerns Penn-Star's duty to defend. "In New York, an insurer's duty to defend is 'exceedingly broad.'" *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006)).[3] "An insurer may refuse to defend '*only if* it could be concluded as a matter of law that there is *no possible* factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013) (emphasis added) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985)).

"New York courts look to two sources of information to determine whether there is a possible factual or legal basis for an obligation to defend." *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 323–24 (S.D.N.Y. 2020). First, under the "four corners" rule, "[a]n insurer's duty to defend 'arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim.'" *Worth Const. Co. v. Admiral Ins. Co.*, 888 N.E.2d 1043, 1045 (N.Y. 2008) (quoting *Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 690 N.E.2d 866, 868 (N.Y. 1997)). Those allegations must be "liberally construed" and "[a]ny doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier."

[3] The parties agree that New York insurance law governs this action. *See Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989); *see Bennett v. Sterling Planet, Inc.*, 546 F. App'x 30, 33 (2d Cir. 2013) (summary order) ("In a diversity case, where the parties have agreed to the application of the forum law—as evidenced by reliance on that law in the parties' briefing, as in this case—their agreement ends the choice-of-law inquiry.").

*Euchner-USA, Inc.*, 754 F.3d at 141 (quoting *Brook Shopping Ctr. v. Liberty Mut. Ins. Co.*, 439 N.Y.S.2d 10, 12 (1st Dep't 1981)).

Second, because "the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured," *Fitzpatrick v. Am. Honda Co.*, 575 N.E.2d 90, 93 (N.Y. 1991), the Court is also obligated to examine the information possessed by the insurer. *See id.* at 93–94 ("[A] contrary rule making the terms of the complaint controlling would allow the insurer to construct a formal fortress of the third party's pleadings . . . thereby successfully ignoring true but unpleaded facts within its knowledge that require it . . . to conduct the . . . insured's defense." (internal quotation marks and citation omitted)). Thus, even when the complaint itself does not contain facts or law suggesting a possibility of coverage, the insurer is required "to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Id.* at 93; *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 98 (2d Cir. 2018) (same) (quoting *Fitzpatrick*, 575 N.E.2d at 93).[4]

Plaintiffs have discharged their duty to allege a claim that falls within the Policy's insuring clause. Hernandez alleges he suffered a bodily injury on the Premises on February 23, 2021. The Policy entitles Plaintiffs to indemnification for amounts that they are legally obligated to pay as a result of bodily injury suffered at the Premises during the policy period from August 30, 2020 to August 30, 2021. Dkt. No. 18-2 ¶ 52; *see* Dkt. No. 18-1 at 15, 29 (insurance applies

[4] "The insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy." *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 535 (S.D.N.Y. 2011) (internal quotation marks and citation omitted); *see also BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1131 (N.Y. 2007) ("The [duty to defend] inquiry is whether the allegations fall within the risk of loss undertaken by the insured and it is immaterial that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions.").

to "bodily injury" if it was caused by an "occurrence," defined as an "accident," in the "coverage territory," and such injury occurred within the policy period). If Hernandez recovers on his claims against Plaintiffs in the Underlying Action, the insuring clause would give Plaintiffs a right to indemnification. And, because there is a risk that Hernandez could recover, the Policy—absent the application of the Exclusion—would impose on Penn-Star a duty to defend.

Penn-Star's principal argument is that, notwithstanding the insuring clause, it has no duty to defend or to indemnify because Hernandez's claim is excluded by operation of the Independent Contractor Exclusion. Dkt. No. 21-1 at 12. Relying on the allegation in the Underlying Action that Hernandez was employed by Millenium Tank and was working for it on the Premises at the time of the accident, Penn-Star argues that the Independent Contractor Exclusion applies as a matter of law.

"Under New York law, which governs this dispute, an insurer bears the burden of proving that an exclusion applies." *Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012). "In New York, '[t]he law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to the insureds.'" *Principal Life Ins. Co. v. Brand*, 2023 WL 8270721, at *3 (2d Cir. Nov. 30, 2023) (summary order) (quoting *Beazley Ins. Co. v. ACE Am. Ins. Co.*, 880 F.3d 64, 68 (2d Cir. 2018)); *see Am. Eur. Ins. Co. v. Eire Concrete Inc.*, 2025 WL 268095, at *7 (S.D.N.Y. Jan. 22, 2025); *Pioneer Tower Owners Ass'n v. Farm Fire & Cas. Co.*, 908 N.E.2d 875, 876 (N.Y. 2009); *see id.* at 877 ("[E]xclusions or exceptions from policy coverage must be specific and clear in order to be enforced." (internal quotation marks and citation omitted)). "When an insurer seeks to disclaim coverage on the . . . basis of an exclusion . . . the insurer will be required to provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the

policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." *Euchner-USA, Inc.*, 754 F.3d at 142 (quoting *Auto. Ins. Co. of Hartford*, 850 N.E.2d at 1155) *see also Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (the "insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon" (internal quotation marks and citation omitted)); *Cont'l Cas. Co. v. Rapid–Am. Corp.,* 609 N.E.2d 506 (N.Y. 1993). Put otherwise, "[w]here 'the only theory of liability requires proof of [conduct] encompassed by the exclusion, the insurance carrier has no duty to indemnify and is therefore relieved of the duty to defend.'" *Commonwealth Ins. Co. v. 2610 Cropsey Dev. Corp.*, 2025 WL 3004780, at *5 (E.D.N.Y. Oct. 27, 2025) (quoting *Tartaglia v. Home Ins*., 658 N.Y.S.2d 388, 398 (2d Dep't 1997)); *Davis v. Home Ins. Co.*, 1995 WL 380133, at *2 (S.D.N.Y. June 26, 1995); *PepsiCo, Inc. v. Cont'l Cas. Co.,* 640 F. Supp. 656, 660 (S.D.N.Y. 1986). "If any allegations in the complaint 'fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be,' an insurer must defend." *Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d 354, 364 (S.D.N.Y. 2020) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 274 (N.Y. 1984)). Moreover, the duty to defend "perdures until it is determined *with certainty* that the policy does not provide coverage." *Hugo Boss Fashions v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original).

The language of the Independent Contractor Exclusion is clear and unambiguous. It provides that the Policy "does not apply to 'bodily injury' to any . . . 'employee' of any independent contractor or subcontractor . . . while performing any work for you." Dkt. No. 18-1

at 46. Under that language, "[i]f an independent contractor or its employee were injured in the course of working for [the insured], that injury would not be covered by the . . . Policy." *Century Surety Co. v. Franchise Contractors, LLC*, 2016 WL 1030134, at *6 (S.D.N.Y. Mar. 10, 2016) (construing a provision that "excludes coverage of 'bodily injury to any independent contractor or the employee of any independent contractor while working on behalf of any insured'" and characterizing such provision as "unambiguous" (cleaned up)); *see Century Surety Co. v. Cas & Sons Corp.*, 2018 WL 6164724, at *4 (E.D.N.Y. Aug. 31, 2018) (exclusion with similar language "is plainly unambiguous"); *United Specialty Ins. Co. v. CDC Housing, Inc.*, 233 F. Supp. 3d 408, 413 (S.D.N.Y. 2017) (exclusion with similar language is "unambiguous"). It is sufficient that the claimant be an employee of an independent contractor or subcontractor and that he or she was injured while performing work on behalf of the insured. It is not necessary that the claimant be working at the direction of the insured. *See Century Surety Co.*, 2016 WL 1030134, at *6 (exclusion of coverage for bodily injury to the employee of independent contractor incurred while working "on behalf of" the insured is unambiguous); *CDC Housing, Inc.*, 233 F. Supp. 3d at 413 (exclusion provision excluding coverage for "bodily injury to any independent contractor or the 'employee' of any independent contractor while such independent contractor or their employee is working *on behalf of* [insured]" is unambiguous (emphasis added)).

Penn-Star has not established, however, that there exists "no legal or factual allegation in the underlying complaint for which the insurer might eventually have to indemnify the insured." *Com. Union Assur. Co., PLC v. Oak Park Marina, Inc.*, 198 F.3d 55, 59 (2d Cir. 1999). Hernandez alleges that he suffered serious and substantial injuries while he was at the Premises as a result of Plaintiffs' negligence. Dkt. No. 18-2 ¶¶ 54–58. Under New York law, to sustain a claim for negligence, a plaintiff must show "(1) a duty owed by the defendant to the plaintiff, (2)

a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon by Solomon v. City of New York*, 489 N.E.2d 1294, 1294–95 (N.Y. 1985)). New York landowners owe all individuals on their property "a duty of reasonable care under the circumstances to maintain their property in a safe condition." *Tagle v. Jakob*, 763 N.E.2d 107, 108–09 (N.Y. 2001); *accord Hammonds v. Burlington Coat Factory Warehouse Corp.*, 708 F. Supp. 3d 446, 449 (S.D.N.Y. 2023). This duty "does not depend upon the plaintiff's status as invitee, licensee, or trespasser." *Rivera v. Nelson Realty, LLC*, 858 N.E.2d 1127, 1128 (N.Y. 2006); *see also Tagle*, 763 N.E. at 108 (noting that Court of Appeals abolished the distinction between invitees, licensees, and trespassers). Instead, "the scope of any such duty of care varies with the foreseeability of the possible harm" and depends on "the reasonable expectations of the parties and society generally." *Id.* at 109. In other words, Hernandez's claim of negligence is not contingent on his status as an employee of an independent contractor or even his lawful presence on the property. *See Soich v. Farone*, 763 N.Y.S.2d 168, 170 (3d Dep't 2003) ("It is well settled that a plaintiff's status as trespasser does not absolve the landowner of its duty to exercise reasonable care under all the circumstances."); *see, e.g., Banks by Banks v. United States*, 969 F. Supp. 884, 892 (S.D.N.Y. 1997) (defendant owed children duty of care where foreseeable that children would climb gate, even if employee had not invited the children onto the premises).

It thus is immaterial to Plaintiffs' demand that Penn-Star satisfy the duty to defend that Hernandez has alleged that he was working for an independent contractor and working on behalf of Plaintiffs at the time of the injury.[5] In other words, the complaint in the Underlying Action

---

[5] It is additionally immaterial that Hernandez brought claims under the NYLL that are contingent on his status as an employee. *See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 170 (N.Y. 2002) ("If any of the claims against an insured arguably arise from

has alleged facts that could give rise to a right of recovery by Hernandez against the Plaintiffs even if Hernandez could not prove his allegations that he was, at the time, hired by Millennium Tank or performing work for Plaintiffs. Moreover, Plaintiffs have alleged facts that would support the contention that he was not working on behalf of an insured at the time of the injury. AC ¶ 16 ("Plaintiffs dispute that Mr. Hernandez was even present at or engaged in any work on the Premises at the time of the alleged accident"); *id.* ¶ 13 (principal of Tamburello was "physically present at the Premises and supervising the work on the date of the alleged accident, and [] did not see Mr. Hernandez at the job site any time that day"); *id.* ¶ 14 (Hernandez not among three Millennium Tank employees working on the date of the alleged incident). Plaintiffs allege that if he was present, his presence was not authorized and he was not performing contracted-for work. *Id.* ¶ 16. In short, Hernandez can establish Plaintiffs' liability in the Underlying Action without at the same time establishing facts that would give rise to application of the exclusion. *See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 170 (N.Y. 2002) (insurer can only negate coverage where "complaint can be interpreted *only* to exclude coverage."); *cf. Tartaglia*, 658 N.Y.S.2d at 398 (insurer has no duty to defend "where the only theory of liability requires proof of intentional wrongdoing encompassed by the exclusion"); *2610 Cropsey Dev. Corp.*, 2025 WL 3004780, at *5 (no duty to defend where the only theory of liability required a finding that underlying plaintiff had in fact occupied disputed land and such a finding placed suit outside of coverage); *Davis v. Home Ins. Co.*, 1995 WL 380133, at *2 (S.D.N.Y. June 26, 1995) (no duty to defend where acts charged all required the

---

covered events, the insurer is required to defend the entire action." (alterations accepted) (internal quotation marks and citation omitted)); *see also Mordkofsky v. V.C.V. Development Corp.*, 563 N.E.2d 263, 265 (N.Y. 1990) (claims under NYLL §§ 200(1) and 241(6) require plaintiff to demonstrate that he or she "was both permitted or suffered to work on a building or structure and that he was hired by someone, be it owner, contractor, or their agent").

Government to prove an element of intent or deliberate wrongfulness, which if proved, would place suit outside of coverage). 331 W. 38th purchased "litigation insurance" from Penn-Star. *See Fitzpatrick*, 575 N.E.2d at 95. It is entitled to the benefit of that insurance, at least up until the point it is established that the Independent Contractor Exclusion applies.

Penn-Star cites cases that are inapposite. Those cases either arise on summary judgment or on circumstances where it was undisputed that an exclusion applied. *See Ruiz v. 829 Realty LLC*, 152 N.Y.S.3d 904, 904–05 (1st Dep't 2021) (dismissing claim where neither the complaint nor affidavit "directly countered plaintiff's factual allegations that he was working for a contractor at the premises when his accident occurred"); *United Speciality Ins. Co. v. CDC Housing, Inc.*, 233 F. Supp. 3d 408, 414 (S.D.N.Y. Feb. 9, 2017) (granting judgment on the pleadings to insurer where insured did not dispute that exclusion applied); *Northfield Ins. Co. v. ABC Constr. & Home Improvement, Inc.*, 2020 WL 2616306, at *5 (E.D.N.Y. May 4, 2020) (granting default judgment to insurer because on a motion for a default judgment, the insurer's allegations that the underlying plaintiff was injured while acting as an independent contractor were deemed true); *ACC Constr. Corp. v. Tower Ins. Co. of N.Y.*, 921 N.Y.S.2d 218, 219 (1st Dep't 2011) (exclusion applies where, at summary judgment, "record demonstrates that the decedent was an employee of an independent contractor"); *see also 96-16th St., LLC v. Penn-Star Ins. Co.*, 805 F. Supp. 3d 498, 504 (S.D.N.Y. 2025) (no duty to defend where "there is no dispute" that underlying plaintiff alleges he was injured while working for subcontractor); *United Nat'l Ins. Co. v. Sutton Place Ass'n, Inc.*, 2025 WL 449308, at *4 (M.D. Fl. Feb. 10, 2025) (summary judgment; Florida law). In this case, by contrast, Plaintiffs do not admit that Hernandez was the employee of an independent contractor and instead have alleged facts that must be accepted as true at this stage and that, if proven true, would establish that the

Independent Contractor Exclusion does not apply. *See Union Mutual Fire Ins. Co. v. 259 Rogers LLC*, 2025 WL 9755600, at *11 (E.D.N.Y. Sept. 23, 2025) (denying summary judgment to insurer because, though the terms of the independent contractor exclusion are unambiguous, the insured raised a "genuine dispute of material fact as to whether [underlying plaintiff] was an independent contractor or an employee.").

**CONCLUSION**

Penn-Star's motion to dismiss Plaintiffs' Amended Complaint is DENIED.

Plaintiffs are granted leave to file a corrected Amended Complaint by no later than August 18, 2026, limited to correcting the dates on which the complaint in the Underlying Action alleges the incident occurred.

The Clerk of Court is respectfully directed to close Dkt. No. 21.

SO ORDERED.

Dated: August 13, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge